RECEIVED

FEB - 6 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| MANUEL RAMOS | CIVIL ACTION NO. 13-2861 |
| VERSUS | JUDGE DOHERTY |
| SWIFTSHIPS SHIPBUILDERS, LLC | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court are the following motions: (1) Motion for Partial Summary Judgment filed by plaintiff Manuel Ramos ("Mr. Ramos") [Doc. 22]; and (2) Motion to Strike Portions of Swiftships' Memorandum in Opposition to Ramos' Motion for Partial Summary Judgment [Doc. 32] filed by Mr. Ramos. In his motion for partial summary judgment, Mr. Ramos seeks summary judgment on: (1) "Swiftships' affirmative defense of fraud in the inducement, because Swiftships cannot complain of any fraud committed by its own agent[;]" and (2) Mr. Ramos's claim that Swiftships has breached [its] settlement agreement with him[.]" Swiftships Shipbuilders, LLC ("Swiftships") has filed an opposition brief to the motion for partial summary judgment [Doc. 27], and plaintiff has filed a Motion for Leave to File a Reply Brief [Doc. 31], which is herein GRANTED. The Court will discuss the Motion to Strike in a separate section at the end of this Ruling. For the following reasons, the Motion for Partial Summary Judgment is DENIED because of the existence of genuine issues of material fact, and the Motion to Strike is DENIED.

I.      **Factual and Procedural History**

The following facts are undisputed as best this Court can determine from the filings of the parties:

1.      Swiftships Shipbuilders, LLC is the shipbuilding arm and subsidiary of Swift Group, LLC, a Louisiana-based company with annual revenue of approximately $50,000,000.00.

2. Calvin Leleux is Swiftships' chairman. Beginning in the late 1970s, Swiftships began to do substantial business in Venezuela and was represented there by members of the von Fedak family. In 2000, Swiftships' representative and senior member of the von Fedak family died. Thereafter, that representative's son, Jorge von Fedak, began to represent Swiftships in Latin America.

3. In 2004, Mr. von Fedak, pursuant to a power of attorney from Swiftships, retained plaintiff Manuel Ramos, a Venezuelan attorney, to represent Swiftships in a lawsuit Swiftships filed against a company named DIANCA.

4. Pursuant to Venezuelan law, Mr. Ramos's legal fees were to be fixed by statute. According to the parties, in contractual disputes such as the lawsuit Swiftships filed against DIANCA, attorneys' fees are set based on the size of the claim. Consequently, the attorney for a party in a contractual dispute need not negotiate the fee with the client, because the fee is determined by statute.

5. Mr. Ramos represented Swiftships in the DIANCA matter for more than five years, making at least 16 court appearances; filing 20 to 30 voluminous pleadings, in three different tribunals; negotiating with a wide variety of individuals; and vigorously representing his client. Several months after concluding his representation of Swiftships, and after repeated requests for payment, Mr. Ramos filed a claim against Swiftships in Venezuela for his attorney's fees.

6. On January 5, 2013, Mr. Leleux sent a letter to Mr. Ramos and Mr. von Fedak expressly authorizing Mr. von Fedak to negotiate with Mr. Ramos on Swiftships' behalf, in an effort to resolve Mr. Ramos's claim for attorney's fees. The letter states as follows:

> This letter is to authorize Jorge Von Fedak only as Swiftships Shipbuilders' representative to negotiate in good faith on behalf of Swiftships in order to resolve legal matters regarding the above-referenced legal proceedings. This instrument authorizes negotiations only and is in no way a binding resolution unless agreed to in writing by Swiftships Shipbuilders, LLC.

Mr. von Fedak and Mr. Ramos met in Venezuela to begin negotiations, and Mr. Ramos argues the matter ultimately was settled for $500,000.00. Mr. Leleux signed the Settlement

Agreement on January 9, 2013, and Mr. Ramos signed the Agreement on January 11, 2013.[1] The Settlement Agreement contains the following "Guarantor Provision:"

> By his signature above, Jorge Von Fedak Lotz hereby agrees to be bound by the provisions of this Agreement and shall be a guarantor responsible for the entire amount stated above, and in the event of a default by Swiftships.

Mr. von Fedak signed the Settlement Agreement on January 11, 2013.[2]

How the settlement was achieved – and whether it is binding – is contested by the parties and is the subject of the instant lawsuit, filed in this Court on October 14, 2013. It is the position of Swiftships that Mr. Ramos and Mr. von Fedak colluded to defraud Swiftships of the settlement amount, and because of that, presumably, Swiftships does not owe Mr. Ramos the amounts allegedly due under the Settlement Agreement. This allegation is largely based on Swiftships' somewhat vague assertions that Mr. von Fedak and Mr. Ramos have been very friendly for many years, which Swiftships appears to argue would provide a motive for Mr. von Fedak – its attorney and agent[3] – to defraud *Swiftships*. Swiftships also appears to argue a lack of consent in the formation of the Settlement Agreement – alleged to be a contract under Louisiana law – thereby vitiating the contract in the following particulars: Swiftships argues Mr. von Fedak represented to Mr. Leleux that the Settlement Agreement between Swiftships and Mr. Ramos was contingent upon Swiftships being awarded a contract with a Venezuelan company – Petróleos de Venezuela ("PDVSA") – and that

---

[1] A copy of the Settlement Agreement is attached to plaintiff's Motion for Partial Summary Judgment as Exhibit "G," Doc. 22.

[2] *Id.*

[3] It is not lost on this Court that the evidence shows Mr. von Fedak negotiated the settlement with Mr. Ramos *on behalf of Swiftships as Swiftships' agent.* Thus, to the extent that Swiftships' argument is that Mr. von Fedak may have defrauded a party in this matter, it appears Swiftships is arguing Mr. von Fedak <u>defrauded Swiftships, not Mr. Ramos</u>, and any potential remedy Swiftships might have – should it have any remedy at all – might be against Mr. von Fedak. This issue has not been briefed by the parties and is, therefore, not properly before the Court.

3

because the Swiftships-PDVSA contract was never completed, the Settlement Agreement between Swiftships and Mr. Ramos was never confected, and therefore, is not binding. Some background information is necessary here. According to the deposition testimony of Mr. von Fedak, in addition to being an attorney, Mr. von Fedak is also a member of a limited liability company called MDG, a company that was attempting to launch a ship design/shipbuilding business and was in negotiations with PDVSA to provide PDVSA with approximately 100 new vessels. Mr. von Fedak has testified that while Mr. Ramos's claim for attorney's fees was pending against Swiftships in Venezuela, MDG was in preliminary discussions with Swiftships to use Swiftships' shipyard in Jeanerette, Louisiana for the construction of vessels should MDG be awarded the PDVSA contract. It is the position of Mr. von Fedak that MDG's discussions with Swiftships – and the role Swiftships might play in the shipbuilding venture – must have been known to PDVSA, because at some point during negotiations with MDG, officials with PDVSA expressed concern to MDG's members about Swiftships' on-going litigation with Mr. Ramos over the issue of the unpaid professional fees. According to Mr. von Fedak, Swiftships was advised by PDVSA that if Swiftships wanted to be included on the MDG-PDVSA "team" as a subcontractor, Swiftships would have to resolve its legal dispute with Mr. Ramos. According to Mr. von Fedak, he alleges the foregoing chain of events is what led to Mr. Leleux giving Mr. von Fedak a power of attorney to negotiate a settlement between Swiftships and Mr. Ramos.

Based on the foregoing, Swiftships now argues the Settlement Agreement between Swiftships and Mr. Ramos was contingent on "an award of a contract from PDVSA to <u>Swiftships</u>" (not MDG, a factual inconsistency this Court will discuss hereinafter) – despite the fact that the Settlement Agreement contains no such language – and that Mr. Ramos, through his negotiations with Mr. von

Fedak, should have known of this "false representation." Thus, to recap, Swiftships argues Mr. von Fedak represented to Mr. Leleux that the Settlement Agreement between Swiftships and Mr. Ramos would be contingent upon *Swiftships* getting a contract with MDG, despite the fact that such contingency language does not appear in the Settlement Agreement that Mr. Leleux and Mr. Ramos signed. Furthermore, Swiftships argues that, because of the close, personal relationship between Mr. von Fedak and Mr. Ramos, Mr. Ramos must have known the Settlement Agreement was contingent on the foregoing "false representation," which somehow proves Mr. Ramos was colluding with Mr. Von Fedak in perpetrating a fraud on Swiftships.

In response, Mr. von Fedak specifically disputes that he colluded with Mr. Ramos in any way, testifying at his deposition that: "Calvin and I agreed . . . never to mention PDVSA [to Mr. Ramos] because if we would mention PDVSA and a contract we were negotiating with, I was certain that Mr. Ramos' expectations [for a settlement amount] would be much higher."[4]

Mr. Ramos filed suit against Swiftships in this Court, alleging claims of breach of contract and detrimental reliance. Swiftships responded, asserting an affirmative defense of fraud. In essence, Swiftships is arguing a lack of consent to the Settlement Agreement with Mr. Ramos because of a fraudulent misrepresentation – that the Settlement Agreement was contingent on an outside event that did not occur – as the basis for not making the payments. In the instant motion for summary judgment, Mr. Ramos seeks judgment in his favor on his breach of contract claim and with respect to Swiftships' affirmative defense of fraud.

---

[4] *See* deposition of Jorge von Fedak, attached as Exh. "C" to plaintiff's Motion for Partial Summary Judgment, Doic. 22, at 61:1-15; *see also* deposition of Manuel Ramos, attached as Exh. "D," at 31:4-8 ("I don't know of the existence of [MDG].").

II.     **Law and Analysis**

   A.     **Summary Judgment Standard**

"A party against whom a claim, counterclaim, or cross-claim is asserted or declaratory judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the parties favor as to all or any part thereof." Fed. R. Civ. Pro. 56(b). Summary judgement is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or is otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Pro. 56(e)

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> [. . . .]
>
> ... In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

**B.     Motion for Partial Summary Judgment [Doc. 22]**

Mr. Ramos argues the Settlement Agreement is a valid, enforceable contract; that Swiftships breached the contract by failing to pay Mr. Ramos any of the amounts due under the Settlement Agreement; and that Mr. Ramos suffered damages as a result thereof. As such, Mr. Ramos argues he is entitled to summary judgment on his breach of contract claim. In response, Swiftships argues there is a genuine issue of fact as to whether the Settlement Agreement is valid and enforceable, because Mr. von Fedak and Mr. Ramos colluded in order to fraudulently induce Mr. Leleux to sign the Settlement Agreement, ergo, the Settlement Agreement is not binding and enforceable due to a lack of consent, and Mr. Ramos is not entitled to any payments thereunder.

Louisiana law recognizes – and the parties agree – a settlement agreement is a contract. *See In re Raymark Indus., Inc.*, 831 F.23d 550, 553 (5th Cir. 1987).[5] Settlement agreements are generally defined by Article 3071 of the Louisiana Civil Code, which states: "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. A

---

[5] The parties agree Louisiana law governs the dispute and both argue Louisiana law. For these purposes only, ths Court will accept Louisiana law governs the issues now before the Court.

compromise shall be made *in writing or recited in open court*, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings. La. Civ. Code art. 3072.

In order to recover on his breach of contract claim, Mr. Ramos must prove the following elements: (1) the obligor's [Swiftships] undertaking an obligation to perform, (2) the obligor [Swiftships] failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee [Ramos]. *Favrot v. Favrot*, 68 So.3d 1099, 1109 (La. App. 4th Cir. 2011), citing *Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So.2d 426, 427 (La. App. 4th Cir.1986). *See also Hercules Machinery Corp. v. McElwee Bros., Inc.*, 2002 WL 31015598 at *9 (E.D. La. Sept. 2, 2002) ("The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages"). Article 1848 of the Louisiana Civil Code states:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

Louisiana law "encourages the settlement of disputes by compromise, and such settlements should not be rescinded lightly." *Higgins v. Spencer*, 531 So.2d 768, 770 (La. App. 1st Cir. 1988), citing *Durbin v. Cockerham*, 442 So.2d 634, 636 (La. App. 1st Cir.1983). However, under the Louisiana law of obligations, four elements are required for confection of a valid contract: (1) the parties must possess the capacity to contract; (2) **the parties' mutual consent must be freely given**; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose. La. Civ. Code arts. 1918, 1927, 1966, 1971; *First National Bank of Shreveport v. Williams*, 346 So.2d 257 (La. App. 3rd Cir. 1977).

With respect to the element of consent, under Louisiana law, a contract is formed by the

9

consent of the parties established through offer and acceptance. La. Civ. Code. art.1927. Thus, an enforceable contract requires a meeting of the minds. *State v. Pelas*, 745 So.2d 1215, 1217 (La. App. 1st Cir. 1999), *citing Brown v. Automotive Cas. Ins. Co.*, 644 So.2d 723, 730 (La. App. 1st Cir. 10/7/94), *writ denied*, 648 So.2d 932 (La.1/6/95). Where there is no meeting of the minds between the parties, a contract is void for lack of consent. *Pelas*, 745 So.2d at 1217, *citing Stockstill v. C.F. Industries, Inc.*, 665 So.2d 802, 820 (La. App. 1st Cir. 12/15/95), *writ denied*, 669 So.2d 428 (La. 3/15/96).

Finally, under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd results, no further interpretation may be made in search of the parties' intent." *Shocklee v. Massachusetts Mut. Life Ins. Co.*, 369 F.3d 437, 439-40 (La. App. 5th Cir. 2004), *citing* La. Civ. Code Ann. art. 2046. As a result, if a contract is unambiguous on its face, "the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." *Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993). The court explained in *Shocklee*:

> Under Louisiana law, a contract is ambiguous when the contract is "uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." In re Liljeberg Enterprises, Inc., 304 F.3d 410, 440 (5th Cir.2000) (internal quotation marks and citations omitted). Importantly, Louisiana law "does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties."

369 So.3d at 440, *citing Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir.1994).

In the instant case, Mr. Ramos argues he has proven all of the elements of a valid, enforceable contract by showing that Mr. Leleux executed the Settlement Agreement on behalf of Swiftships as the company's chairman, which agreement obligated Swiftships to pay Mr. Ramos a

total of $500,000.00, with $100,000.00 to be paid on January 30, 2013, followed by quarterly installments of $50,000.00 on April 1, 2013, July 1, 2013, October 1, 2013, January 2, 2013, etc., until paid in full, and that Swiftships has made no payments to date. Furthermore, Mr. Ramos argues he has shown the Settlement Agreement in question is a valid contract by showing both Mr. Ramos and Mr. Leleux had the capacity to enter into the Settlement Agreement.

Nevertheless, there remain issues of material fact concerning whether there was a lack of consent to form the contract on the part of Swiftships. Again, Swiftships argues its consent to form the contract was vitiated by fraud, and its arguments have raised several questions of fact that preclude summary judgment. For instance, Swiftships argues the Settlement Agreement between Swiftships and Mr. Ramos was contingent on "an award of a contract from PDVSA to Swiftships." However, in his motion, Mr. Ramos argues "even though the PDVSA contract would go to MDG, and not Swiftships, Swiftships' role as a subcontractor was known to PDVSA."[6] It is unclear to this Court whether PDVSA was negotiating directly with MDG or Swiftships. Considering that Swiftships' argument concerning fraud centers so heavily on this factual aspect, at this juncture the Court cannot determine and/or resolve this factual inconsistency from what has been submitted - which fact is necessary to an understanding of Swiftships' fraud defense or evaluation of the meeting of the minds.

Furthermore, Swiftships argues the personal relationship between Mr. von Fedak and Mr. Ramos is a factual determination that gives rise to the fraud that was allegedly perpetrated. In support of this argument, Swiftships argues that despite the fact that Mr. von Fedak has been named as a guarantor of the Settlement Agreement, Mr. Ramos did not sue Mr. von Fedak to recover any

---

[6] *See* plaintiff's Memorandum in support of Motion for Partial Summary Judgment, Doc. 22, at p. 5.

of the amounts allegedly owed under the agreement. The foregoing may or may not be evidence of collusion; it is impossible for the Court to make such a determination at this time. At this stage of the litigation, for the Court to accept any litigant's argument on this point would require a credibility determination, which is improper at the summary judgment stage. *See, e.g., Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("credibility determinations are not part of the summary judgment analysis.").

This Court can only conclude at this phase of the proceedings that there are sufficient genuine issues of material fact regarding multiple prongs applicable to the contractual inquiry so as to preclude summary judgment, at this time. For this reason, it would be improper to enter summary judgment in Mr. Ramos's favor on his breach of contract claim.

### C. Motion to Strike [Doc. 32]

Mr. Ramos seeks an order of this Court striking certain portions of Swiftships' opposition brief pursuant to Rule 12(f) of the Federal Rules of Civil Procedure[7] on grounds the relevant portions constitute "immaterial, impertinent, or scandalous matter." The "matter" that Mr. Ramos seeks to have stricken from the record is the following excerpt from Swiftships' opposition brief:

> It is Swiftships' position that Mr. von Fedak did not act as an agent in representing the best interests of Swiftships, and that he had a relationship with Mr. Ramos where they were working together against Swiftships. Leleux Dep. at 74:9-18. Further, Mr.

---

[7] Rule 12(f) states:

(f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

    (1) on its own; or

    (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed.R.Civ.P.12(f).

von Fedak, in August of 2013, discussed the matter with Mr. Ramos, and they came to an understanding that Mr. von Fedak would speak with Mr. Ramos's attorneys in the United States about what role he would play in this matter. Exh. 1. Mr. Ramos's attorneys assured Mr. von Fedak in their conversation in December 2013 that they did not sue Mr. von Fedak, even though he was a guarantor on the settlement agreement. Exh 2.

**Mr. von Fedak has been colluding with Mr. Ramos and his attorneys prior to the litigation and even during the litigation.** Mr. von Fedak refused to speak with Swiftships Counsel but spoke freely with Mr. Ramos's attorneys, and even forwarded all emails from Swiftships counsel to Mr. Ramos's attorneys. Exh. 3. It is clear that Mr. von Fedak and Mr. Ramos were working together all during Swiftships' involvement with Mr. Ramos.[8]

Mr. Ramos contends the foregoing paragraphs imply "that Mr. Ramos and his attorneys" – including Mr. Ramos's current counsel – have "improperly orchestrat[ed] a scheme to 'work . . . together against Swiftships' with Jorge von Fedak" and "explicitly accuse undersigned counsel of unprofessional and possibly criminal conduct,"[9] with no evidence to support such allegations.

Rule 12(f) motions are generally not favored. *See Craig Funeral Home, Inc. v. State Farm Mut. Auto. Ins.*, Co., 254 F.2d 569, 572 (5th Cir. 1958), citing 2 Moore's Federal Practice, 2nd ed., Paragraph 12.21(2), p. 2317, to wit: "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." Furthermore, this Court concludes the pertinent material is not subject to being stricken pursuant to Rule 12(f). Rather, the relevant pleadings are directly relevant to the controversy at issue, *i.e.*, whether Swiftships was fraudulently induced to sign the Settlement Agreement with Mr. Ramos. *See, e.g., United States v. Coney*, 689 F.3d 365, 379-80 (5th Cir. 2012) ("Although the disputed pleadings might "offend[ ] the sensibilities" of Barbara and her attorneys, those pleadings are not scandalous because they are

---

[8] *See* Mr. Ramos's Motion to Strike, Doc. 32, at p. 2.

[9] *See* plaintiff's Motion to Strike, Doc. 32, at p. 2.

directly relevant to the controversy at issue and are minimally supported in the record."), *citing In re Gitto Global Corp.*, 422 F.3d 1, 12 (1st Cir.2005) (holding that a pleading is not "scandalous" under Rule 12(f) merely because "the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action[;] [a]s a result, courts have permitted allegations to remain in the pleadings when they supported and were relevant to a claim for punitive damages").

Considering the foregoing, the Motion to Strike Portions of Swiftships' Memorandum in Opposition to Ramos' Motion for Partial Summary Judgment [Doc. 32] is DENIED.

### III. Conclusion

For the foregoing reasons,

IT IS ORDERED that the Motion for Partial Summary Judgment filed by plaintiff Manuel Ramos [Doc. 22] is DENIED.

IT IS FURTHER ORDERED that the Motion to Strike Portions of Swiftships' Memorandum in Opposition to Ramos' Motion for Partial Summary Judgment [Doc. 32] is DENIED.

IT IS FURTHER ORDERED that the parties shall contact this Court for the purpose of scheduling a telephone status conference to discuss the status of this matter in light of the forgoing ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana this _____ day of February, 2015.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

14