RECEIVED

AUG 2 1 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| MANUEL RAMOS | CIVIL ACTION NO. 13-2861 |
| VERSUS | JUDGE DOHERTY |
| SWIFTSHIPS SHIPBUILDERS, LLC | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court are the following motions: (1) Motion for Partial Summary Judgment filed by plaintiff Manuel Ramos ("Mr. Ramos") [Doc. 49]; and (2) Motion to Strike Affirmative Defense [Doc. 48] filed by Mr. Ramos.  In the motion for partial summary judgment, Mr. Ramos seeks "judgment in his favor on his claim that Swiftships has breached the contract" to pay him attorney's fees and is therefore liable to him for the full amount of fees, together with interest, expenses, and damages.  In the motion to strike affirmative defense, Mr. Ramos seeks to strike Swiftships' affirmative defense of fraud in the inducement, on grounds such a defense is insufficient as a matter of law.

Swiftships Shipbuilders, LLC ("Swiftships") has filed an opposition to the motion for partial summary judgment [Doc. 49], as well as an opposition to the motion to strike [Doc. 53], and Mr. Ramos has filed a Motion for Leave to File a Reply Brief [Doc. 54], which is herein GRANTED. For the following reasons, both the motion for partial summary judgment and the motion to strike are GRANTED.

## I.      Factual and Procedural History

The instant motions represent the second time the parties have attempted to brief the very issues before the Court at this time.  The following facts are undisputed as best this Court can determine from the filings of the parties:

1.  Swiftships Shipbuilders, LLC is the shipbuilding arm and subsidiary of Swift Group, LLC, a Louisiana-based company with annual revenue of approximately $50,000,000.00.

2.  Calvin Leleux is Swiftships' chairman. Beginning in the late 1970s, Swiftships began to do substantial business in Venezuela and was represented there by members of the von Fedak family. In 2000, Swiftships' representative and senior member of the von Fedak family died. Thereafter, that representative's son, Jorge von Fedak, began to represent Swiftships in Latin America.

3.  In 2004, Mr. von Fedak, pursuant to a power of attorney from Swiftships, retained plaintiff Manuel Ramos, a Venezuelan attorney, to represent Swiftships in a lawsuit Swiftships filed against a company named DIANCA.

4.  Pursuant to Venezuelan law, Mr. Ramos's legal fees were to be fixed by statute. According to the parties, in contractual disputes such as the lawsuit Swiftships filed against DIANCA, attorneys' fees are set based on the size of the claim. Consequently, the attorney for a party in a contractual dispute need not negotiate the fee with the client, because the fee is determined by statute.

5.  Mr. Ramos represented Swiftships in the DIANCA matter for more than five years, making at least 16 court appearances; filing 20 to 30 voluminous pleadings, in three different tribunals; negotiating with a wide variety of individuals; and vigorously representing his client.  Several months after concluding his representation of Swiftships, and after repeated requests for payment, Mr. Ramos filed a claim against Swiftships in Venezuela for his attorney's fees.

6.  On January 5, 2013, Mr. Leleux sent a letter to Mr. Ramos and Mr. von Fedak expressly authorizing Mr. von Fedak to negotiate with Mr. Ramos on Swiftships' behalf, in an effort to resolve Mr. Ramos's claim for attorney's fees.  The letter states as follows:

    > This letter is to authorize Jorge Von Fedak only as Swiftships Shipbuilders' representative to negotiate in good faith on behalf of Swiftships in order to resolve legal matters regarding the above-referenced legal proceedings.  This instrument authorizes negotiations only and is in no way a binding resolution unless agreed to in writing by Swiftships Shipbuilders, LLC.

Mr. von Fedak and Mr. Ramos met in Venezuela to begin negotiations, and Mr. Ramos

argues the matter ultimately was settled for $500,000.00.  Mr. Leleux signed the Settlement

2

Agreement on January 9, 2013, and Mr. Ramos signed the Agreement on January 11, 2013.[1] The

Settlement Agreement contains the following "Guarantor Provision:"

> By his signature above, Jorge Von Fedak Lotz hereby agrees to be bound by the
> provisions of this Agreement and shall be a guarantor responsible for the entire
> amount stated above, and in the event of a default by Swiftships.

Mr. von Fedak signed the Settlement Agreement on January 11, 2013.

How the settlement was achieved – and whether it is binding – is contested by the parties and

is the subject of the instant lawsuit, filed in this Court on October 14, 2013. It is the position of

Swiftships that Mr. Ramos and Mr. von Fedak colluded to defraud Swiftships of the settlement

amount, and because of that, presumably, Swiftships does not owe Mr. Ramos the amounts allegedly

due under the Settlement Agreement. This allegation is largely based on Swiftships' somewhat

vague assertions that Mr. von Fedak and Mr. Ramos have been very friendly for many years, which

Swiftships appears to argue would provide a motive for Mr. von Fedak – its attorney and agent – to

defraud *Swiftships*. Swiftships also appears to argue a lack of consent in the formation of the

Settlement Agreement – alleged to be a contract under Louisiana law – thereby vitiating the contract

in the following particulars: Swiftships argues Mr. von Fedak represented to Mr. Leleux that the

Settlement Agreement between Swiftships and Mr. Ramos was contingent upon Swiftships being

awarded a contract with a Venezuelan company – Petroléos de Venezuela ("PDVSA") – and that

because the Swiftships-PDVSA contract was never completed, the Settlement Agreement between

Swiftships and Mr. Ramos was never confected, and therefore, is not binding. Some background

information is necessary here. According to the deposition testimony of Mr. von Fedak, in addition

---

[1] A copy of the Settlement Agreement is attached to plaintiff's Motion for Partial Summary Judgment as Exhibit "G," Doc. 49.

to being an attorney, Mr. von Fedak is also a member of a limited liability company called MDG, a company that was attempting to launch a ship design/shipbuilding business and was in negotiations with PDVSA to provide PDVSA with approximately 100 new vessels.  Mr. von Fedak has testified that while Mr. Ramos's claim for attorney's fees was pending against Swiftships in Venezuela, MDG was in preliminary discussions with Swiftships to use Swiftships' shipyard in Jeanerette, Louisiana for the construction of vessels should MDG be awarded the PDVSA contract.  It is the position of Mr. von Fedak that MDG's discussions with Swiftships – and the role Swiftships might play in the shipbuilding venture – must have been known to PDVSA, because at some point during negotiations with MDG, officials with PDVSA expressed concern to MDG's members about Swiftships' on-going litigation with Mr. Ramos over the issue of the unpaid professional fees.  According to Mr. von Fedak, Swiftships was advised by PDVSA that if Swiftships wanted to be included on the MDG-PDVSA "team" as a subcontractor, Swiftships would have to resolve its legal dispute with Mr. Ramos.  According to Mr. von Fedak, he alleges the foregoing chain of events is what led to Mr. Leleux giving Mr. von Fedak a power of attorney to negotiate a settlement between Swiftships and Mr. Ramos.

Based on the foregoing, Swiftships now argues the Settlement Agreement between Swiftships and Mr. Ramos was contingent on "an award of a contract from PDVSA to <u>Swiftships,</u>" despite the fact that the Settlement Agreement contains no such language, and that Mr. Ramos, through his negotiations with Mr. von Fedak, should have known of this "false representation."  Thus, to recap, Swiftships argues Mr. von Fedak *orally* represented to Mr. Leleux that the Settlement Agreement between Swiftships and Mr. Ramos would be contingent upon *Swiftships* getting a contract with PDVSA/MDG, despite the fact that such contingency language does not appear in the Settlement

4

Agreement that Mr. Leleux and Mr. Ramos signed. Furthermore, Swiftships argues that, because of the close, personal relationship between Mr. von Fedak and Mr. Ramos, Mr. Ramos must have known the Settlement Agreement was contingent on the foregoing "false representation," which somehow proves Mr. Ramos was colluding with Mr. Von Fedak in perpetrating a fraud on Swiftships.

In response, Mr. von Fedak specifically disputes that he colluded with Mr. Ramos in any way, testifying at his deposition that: "Calvin and I agreed . . . never to mention PDVSA [to Mr. Ramos] because if we would mention PDVSA and a contract we were negotiating with, I was certain that Mr. Ramos' expectations [for a settlement amount] would be much higher."[2]

Mr. Ramos filed suit against Swiftships in this Court, alleging claims of breach of contract and detrimental reliance. Swiftships responded, asserting an affirmative defense of fraud. In essence, Swiftships is arguing a lack of consent to the Settlement Agreement with Mr. Ramos because of a fraudulent misrepresentation – that the Settlement Agreement was contingent on an outside event that did not occur – as the basis for not making the payments. In the instant motions, Mr. Ramos seeks judgment in his favor on his breach of contract claim and with respect to Swiftships' affirmative defense of fraud. These motions represent Mr. Ramos's second attempt to dismiss the breach of contract claim in this case.

## II.     Law and Analysis

### A.      Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or declaratory

---

[2] *See* deposition of Jorge von Fedak, attached as Exh. "C" to plaintiff's Motion for Partial Summary Judgment, Doc. 49, at 61:1-15; *see also* deposition of Manuel Ramos, attached as Exh. "D," at 31:4-8 ("I don't know of the existence of [MDG].").

judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the parties favor as to all or any part thereof." Fed. R. Civ. Pro. 56(b).  Summary judgement is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or is otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Pro. 56(e)

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential

6

element of her case with respect to which she has the burden of proof."

[. . . .]

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.*  To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is

not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### B.      Motion for Partial Summary Judgment [Doc. 22]

Mr. Ramos argues the Settlement Agreement is a valid, enforceable contract; that Swiftships breached the contract by failing to pay Mr. Ramos any of the amounts due under the Settlement Agreement; and that Mr. Ramos suffered damages as a result thereof.  As such, Mr. Ramos argues he is entitled to summary judgment on his breach of contract claim.  In response, Swiftships argues there is a genuine issue of fact as to whether the Settlement Agreement is valid and enforceable, because Mr. von Fedak and Mr. Ramos colluded in order to fraudulently induce Mr. Leleux to sign the Settlement Agreement, ergo, the Settlement Agreement is not binding and enforceable due to a lack of consent, and Mr. Ramos is not entitled to any payments thereunder.

Louisiana law recognizes – and the parties agree – a settlement agreement is a contract. *See In re Raymark Indus., Inc.*, 831 F.2d 550, 553 (5th Cir. 1987).[3] Settlement agreements are generally defined by Article 3071 of the Louisiana Civil Code, which states: "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."  La. Civ. Code art. 3071.  A compromise shall be made *in writing or recited in open court*, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.  La. Civ. Code art. 3072.

In order to recover on his breach of contract claim, Mr. Ramos must prove the following

---

[3] The parties agree Louisiana law governs the dispute and both argue Louisiana law.  For these purposes only, ths Court will accept Louisiana law governs the issues now before the Court.

elements: (1) the obligor's [Swiftships] undertaking an obligation to perform, (2) the obligor [Swiftships] failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee [Ramos]. *Favrot v. Favrot*, 68 So.3d 1099, 1109 (La. App. 4th Cir. 2011), citing *Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So.2d 426, 427 (La. App. 4th Cir.1986). *See also Hercules Machinery Corp. v. McElwee Bros., Inc.*, 2002 WL 31015598 at *9 (E.D. La. Sept. 2, 2002) ("The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages"). Article 1848 of the Louisiana Civil Code states:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

Louisiana law "encourages the settlement of disputes by compromise, and such settlements should not be rescinded lightly." *Higgins v. Spencer*, 531 So.2d 768, 770 (La. App. 1st Cir. 1988), citing *Durbin v. Cockerham*, 442 So.2d 634, 636 (La. App. 1st Cir.1983). However, under the Louisiana law of obligations, four elements are required for confection of a valid contract: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose. La. Civ. Code arts. 1918, 1927, 1966, 1971; *First National Bank of Shreveport v. Williams*, 346 So.2d 257 (La. App. 3rd Cir. 1977).

With respect to the element of consent, under Louisiana law, a contract is formed by the consent of the parties established through offer and acceptance. La. Civ. Code. art.1927. Thus, an enforceable contract requires a meeting of the minds. *State v. Pelas*, 745 So.2d 1215, 1217 (La. App. 1st Cir. 1999), citing *Brown v. Automotive Cas. Ins. Co.*, 644 So.2d 723, 730 (La. App. 1st Cir.

10/7/94), *writ denied*, 648 So.2d 932 (La.1/6/95).  Where there is no meeting of the minds between the parties, a contract is void for lack of consent.  *Pelas*, 745 So.2d at 1217, *citing Stockstill v. C.F. Industries, Inc.*, 665 So.2d 802, 820 (La. App. 1ˢᵗ Cir. 12/15/95), *writ denied*, 669 So.2d 428 (La. 3/15/96).

Finally, under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd results, no further interpretation may be made in search of the parties' intent." *Shocklee v. Massachusetts Mut. Life Ins. Co.*, 369 F.3d 437, 439-40 (La. App. 5ᵗʰ Cir. 2004), *citing* La. Civ. Code Ann. art. 2046.  As a result, if a contract is unambiguous on its face, "the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." *Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5ᵗʰ Cir. 1993).  The court explained in *Shocklee*:

> Under Louisiana law, a contract is ambiguous when the contract is "uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." In re Liljeberg Enterprises, Inc., 304 F.3d 410, 440 (5th Cir.2000) (internal quotation marks and citations omitted). Importantly, Louisiana law "does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties."

369 So.3d at 440, *citing Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir.1994).

In the instant case, Mr. Ramos argues he has proven all of the elements of a valid, enforceable contract by showing that Mr. Leleux executed the Settlement Agreement on behalf of Swiftships as the company's chairman, which agreement obligated Swiftships to pay Mr. Ramos a total of $500,000.00, with $100,000.00 to be paid on January 30, 2013, followed by quarterly installments of $50,000.00 on April 1, 2013, July 1, 2013, October 1, 2013, January 2, 2013, etc., until paid in full, and that Swiftships has made no payments to date.  Furthermore, Mr. Ramos argues

10

he has shown the Settlement Agreement in question is a valid contract by showing both Mr. Ramos and Mr. Leleux had the capacity to enter into the Settlement Agreement.

The Court agrees Mr. Ramos has established the requirements for a claim of breach of contract. The signatories to the contract clearly had the capacity to enter into the contract, and Louisiana law recognizes settlement agreements as valid and enforceable contracts. The settlement agreement has a certain object – the settlement of Mr. Ramos's attorney fees dispute with Swiftships – and Mr. Ramos alleges Swiftships has breached the agreement by refusing to pay the agreed-upon amount. The only dispute between the parties is whether there was consent to enter the agreement. However, the only defense that Swiftships has offered to the alleged breach is the argument that Mr. Leleux believed the settlement agreement was contingent upon Swiftships entering into the PDVSA/MDG contract. Notwithstanding Swiftships's argument, Louisiana law is clear that extrinsic evidence of oral conditions not contained within the four corners of the agreement cannot change the terms of the contract where the contract itself is clear and unambiguous, as the contract is in this case. *See, e.g., Shocklee v. Massachusetts Mut. Life Ins. Co.*, 369 F.3d 437, 439-40 (La. App. 5th Cir. 2004), *citing* La. Civ. Code Ann. art. 2046. *See also Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 619-20 (5th Cir. 2005 (Fifth Circuit struck down oral suspensive condition purporting to modify oral contract). As stated hereinabove, if a contract is unambiguous on its face, "the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." *Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993).

In the instant case, the settlement agreement contains no language whatsoever conditioning the enforcement of the agreement on the success of the PDVSA/MDG contract. Therefore, there is

11

no written provision of the contract conditioning the payment of Mr. Ramos's attorney's fees on such

a condition, and to the extent any such condition was expressed orally, under Louisiana law, it cannot

alter the written terms of the agreement.  Given that it is undisputed Swiftships has paid no amounts

due under the agreement, this Court concludes Mr. Ramos has indeed proved the essential elements

of a breach of contract claim and is entitled to summary judgment on this claim.

**C.      Motion to Strike [Doc. 32]**

Mr. Ramos seeks an order of this Court striking Swiftships' affirmative defense of fraud in

the inducement pursuant to Rule 12(f) of the Federal Rules of Civil Procedure[4] on several grounds.

First, Mr. Ramos argues Swiftships' defense of fraud has been a "moving target" throughout this

litigation, constantly changing and evolving factually to defeat the arguments and motions filed by

Mr. Ramos.  Furthermore, Mr. Ramos argues the defense of fraud cannot survive the instant motion

because, as previously discussed in this Ruling, an oral suspensive condition cannot modify a written

contact under Louisiana law; and still furthermore, as discussed below, because Swiftships cannot

be defrauded by its own agent.

In Louisiana, a principal is bound by the authorized acts of his actual agent or mandatary. *See*

La. Civ. Code art. 2989 ("Mandate is an act by which one person, the principal, confers authority on

another person, the mandatary (or agent), to transact one or more affairs for the principal."). *See also*

---

[4] Rule 12(f) states:

(f) Motion to Strike. The court may strike from a pleading an insufficient defense or any
redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is
not allowed, within 21 days after being served with the pleading.

Fed.R.Civ.P.12(f).

*House v. AGCO Corp.*, 2006 WL 3692769 (W.D. La. Dec. 12, 2006) (J. James). In the instant case, Swiftships authorized Mr. von Fedak to negotiate with Mr. Ramos concerning his attorney fee dispute. The ultimate contract to settle the matter was reviewed and signed by Mr. Leleux, the principal. Louisiana law is clear that a "[a] settlement agreement is a contract." *Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd.*, 570 F.3d 219, 225 (5th Cir. 2009). "Public policy favors compromise agreements and the finality of settlements." *Red River Waterway Comm'n v. Fry*, 36 So.3d 401, 407 (La. App 2nd Cir. 2010); *see also Jackson v. N. Bank Towing Corp.*, 213 F.3d 885, 889 (5th Cir. 2000). *See, e.g., Smith v. Frey*, 703 So.2d. 751 (La. App. 4th Cir. 1997) (court of appeal affirmed trial courts' dismissal of plaintiff's claim that she was fraudulently induced by her attorney into signing a release agreement in which she settled her tort suit, where plaintiff signed the release documents but claimed she told her attorney she was refusing the release amount; court reasoned any fraud that was committed was not known to the defendant and could not have been known to the defendant).

In the instant case, to the extent that Mr. Von Fedak may have misrepresented anything, Swiftships has admitted Mr. Ramos did not know of Mr. Von Fedak's alleged misrepresentation, and does not suggest he should have known, as follows:

Q:    What evidence do you have that Dr. Ramos knew, actually knew about any of the representations made to you by Mr. Von Fedak?

A:    Where Dr. Ramos?

Q:    Yes.

A:    I don't know what Dr. Ramos knew.[5]

---

[5] *See* deposition of Calvin Leleux, attached as Exhibit "A" to Motion for Partial Summary Judgment, Doc. 49, at p. 81.

Mr. Leleux, a sophisticated and educated businessman who holds a degree in electrical engineering and is the chairman of a company with annual revenues of approximately $50,000,000, admitted reading the settlement agreement. Furthermore, Mr. Leleux is not directly arguing that Mr. Ramos knew about any alleged false representations concerning the PDVSA/MDG contract.  The evidence in this matter shows Mr. Von Fedak negotiated the settlement with Mr. Ramos on behalf of Swiftships *as Swiftships' agent*.  Thus, to the extent that Swiftships' argument is that Mr. von Fedak may have defrauded a party in this matter, it appears Swiftships is arguing Mr. Von Fedak defrauded *Swiftships*, not Mr. Ramos, and any potential remedy Swiftships may have  – should it have any remedy at all – might be against Mr. Von Fedak, not Mr. Ramos.

Considering the foregoing, the Motion to Strike Affirmative Defense [Doc. 48] is GRANTED, the motion being sound in both fact and law.

## III.   Conclusion

For the foregoing reasons,

IT IS ORDERED that the Motion for Partial Summary Judgment filed by plaintiff Manuel Ramos [Doc. 49] is GRANTED.

IT IS FURTHER ORDERED that the Motion to Strike Affirmative Defense [Doc. 48] is GRANTED.

THUS DONE AND SIGNED in Lafayette, Louisiana this 21st day of August, 2015.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE